UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHELLE R. BUTLER,               )
                                  )
         Plaintiff(s),            )
                                  )
    vs.                           )        Case No. 4:08CV0753 JCH
                                  )
HENRY PAULSON, JR.,               )
                                  )
         Defendant(s).            )

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendant Henry

R. Paulson ("Paulson" or "Defendant"), filed November 7, 2008. (Doc. No. 7). The matter is fully

briefed and ready for disposition.

## BACKGROUND

### Plaintiff's Employment

Beginning on or around August 21, 1995, Plaintiff Michelle R. Butler ("Plaintiff") was

employed as a Program Management Assistant by the Internal Revenue Service ("IRS").

(Defendant's Statement of Uncontroverted Material Facts ("DSUMF"), Doc. No. 9, ¶ 1; Title VII

of the Civil Rights Act of 1964 Complaint for Damages ("Complaint"), Doc. No. 1, ¶ 3). Plaintiff

worked in Department 4 of IRS Operations 3. (DSUMF, ¶ 1).

**Plaintiff's FMLA Leave Request**

Plaintiff requested 240 hours of "Advanced Sick Leave under FMLA"[1] to care for her mother. (DSUMF, ¶ 8).[2] Plaintiff's first-level supervisor at the IRS, Madonna Carrino, approved the leave. (DSUMF, ¶ 9). In her affidavit,[3] Plaintiff alleges that Ms. Carrino did not have the authority to approve the leave request and that only Ms. Ferguson had that authority. (Plaintiff's Affidavit, p. 17). [4] Plaintiff's second-level supervisor, Operations Manager Valerie Ferguson,[5] denied Plaintiff's request for FMLA leave on March 13, 2006. (DSUMF, ¶ 10).[6] Ms. Ferguson denied Plaintiff's request for advanced FMLA leave because she believed that she was not authorized to grant advanced sick leave under the FMLA, based upon her reading of the National Agreement between the IRS and the National Treasury Employees Union ("NTEU") and the IRS Employee Personnel Guide. (DSUMF, ¶ 11). Ms. Ferguson also consulted with Stephanie Brandt, an IRS Human Resources Specialist, who determined that the FMLA entitles employees to up to twelve weeks of leave without pay but not advanced leave. (DSUMF, ¶ 11). Ms. Ferguson also requested written authorization from the IRS Employee Resource Center and an EEO counselor regarding whether she

---

[1]The FMLA refers to the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601, et seq.

[2]In her Complaint (Doc. No. 1), she refers to the person for whom she was to give care during her FMLA leave as her "spiritual mentor." (Complaint, ¶ 10(d)).

[3]Although Plaintiff is represented by counsel, Plaintiff submitted a hand-written twenty-page "affidavit" (Plaintiff's Affidavit, Doc. No. 11) in response to Defendant's Memorandum in Support of his Motion for Summary Judgment and Defendant's Statement of Facts. The Court refers to the page numbers hand-written by Plaintiff.

[4]This factual dispute is not relevant because both parties agree that Ms. Ferguson was the person with the final authority regarding whether Plaintiff's advanced FMLA leave could be approved.

[5]Valerie Ferguson became Operations Manager of IRS Operations 3 on November 15, 2005. (DSUMF, ¶ 10).

[6]Plaintiff and Ms. Ferguson are both African-American. (DSUMF, ¶ 10).

could grant advanced sick leave under the FMLA, but neither provided her with this authorization. (DSUMF, ¶ 11).

Ultimately, Ms. Ferguson granted Plaintiff 40 hours of advanced sick leave under the Family Friendly Leave Act ("FFLA"). (DSUMF, ¶ 12). Ms. Ferguson believed she had authority to grant leave under the FFLA, but not the FMLA. (Id.)

## Complaints/Exhaustion of Remedies

### Plaintiff's March/April 2006 Complaint

On April 21, 2006, Plaintiff filed an EEO complaint (the "March/April 2006 Complaint")[7] against the IRS alleging discrimination on the basis of race based upon the denial of her leave request to care for her mother. (DSUMF, ¶ 2). On May 26, 2006, the IRS accepted Plaintiff's claim for processing and investigated the following claim: "Was the Complainant subjected to disparate treatment based on her race (Black) when on March 13, 2006, she was denied advanced leave under the Family Medical Leave Act?" (DSUMF, ¶ 3). Plaintiff did not object to this characterization of her claim, and she did not amend her claim to add any additional claims. (DSUMF, ¶¶ 3, 5). On March 13, 2008, the IRS issued its Final Agency Decision denying Plaintiff's racial discrimination claim. (DSUMF, ¶ 7; Complaint, ¶ 8).

### Plaintiff's February 2007 Complaint

In February 2007, Plaintiff filed a pre-complaint intake form (informal EEO complaint), alleging race discrimination and a "reprisal" claim. (Reply, p. 2; Government's Exhibit K, Doc. No. 13-3). This February 2007 Complaint was closed on April 5, 2007. (Doc. No. 13-2, ¶ 4; Doc. No.

_____

[7]Plaintiff's affidavit is unclear regarding whether she filed this Complaint in either March or April 2006. See Plaintiff's Affidavit, pp. 1-2; Reply, pp. 1-2

13-4, ¶¶3-4). Plaintiff was issued a Notice of Right to File a Formal Complaint letter on April 5, 2007, but Plaintiff never filed a formal complaint. (Doc. No. 13-2, ¶¶ 4, 5; Doc. No. 13-4, ¶ 4).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**I.      Defendant's Motion for Summary Judgment**

      **A.      Legal Standard**

To make out a prima facie case of discrimination, the employee must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. Jackson v. UPS, 548 F.3d 1137, 1140 (8th Cir. 2008) (citing Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005)).  To make out a prima facie case of retaliation to survive summary judgment, the employee must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  Jackson, 548 F.3d at 1142 (citing McDonnell Douglas, 411 U.S. 792, 93 S. Ct. 1817 (1973)); Watson v. O'Neill, 365 F.3d 609, 613 (8th Cir. 2004).

      **B.      Plaintiff has failed to exhaust her claims of discrimination based on gender, religion, disability and retaliation**.

"Plaintiffs in discrimination cases against government agencies must exhaust their administrative remedies prior to filing a civil action in federal district court."  Watson, 365 F.3d at 614 (citing Brown v. Gen. Serv's. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961 (1976)).  A "plaintiff is deemed 'to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC.'"  Mann v. Tyson Fresh Meats, Inc., No. 08-4010, 2008 U.S. Dist. LEXIS 73893, at *14-15 (D.S.D. Sept. 24, 2008) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)).  Plaintiffs are  required to seek timely and appropriate relief from the EEO department

of the IRS, thereby providing the IRS with notice of the charges and an opportunity to comply voluntarily with applicable statutes. Watson, 365 F.3d at 614. "This procedural requirement also affords the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, thus avoiding unnecessary judicial action." Id. "'Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Williams, 21 F.3d at 223 (quoting Babrocky v. Jewel Food Co. & Retail Meatcutters, 773 F.2d 857, 863 (7th Cir. 1985)).

Plaintiff references two EEO complaints in March or April 2006 and February 27, 2007. (Plaintiff's Affidavit, pp. 1-2; Reply, pp. 1-2).[8] In the March/April 2006 Complaint, Plaintiff alleged racial discrimination. (DSUMF, ¶ 2).[9] Plaintiff exhausted this claim through all the proper administrative channels, and the IRS issued a Final Agency Decision denying her claim of racial discrimination. (DSUMF, ¶¶ 2-6).

With respect to the February 27, 2007 EEO Complaint, Plaintiff filed a pre-complaint intake form (informal EEO complaint), alleging race discrimination and a reprisal claim. (Reply, p. 2). According to the affidavits by Vernell Anderson[10] and David Eaton,[11] Plaintiff only filed this informal

---

[8]Notably, neither of these complaints are attached to Plaintiff's Affidavit or Plaintiff's Complaint. The only document attached to Plaintiff's Complaint is the Department of Treasury's Final Agency Decision, dated March 13, 2008.

[9] Plaintiff admits that "[t]he racial discrimination was the only thing that happened at the time when it was investigated." (Plaintiff's Affidavit, p. 17).

[10]Vernell Anderson is an Equal Employment Opportunity Administrative Assistant in the Treasury Complaint Mega Center, Dallas, Texas. (Doc. No. 8-5, ¶ 1).

[11]David Eaton was the IRS Manager of Territory 12, EEO & Diversity Field Services, Area C, Kansas City, Missouri. (Doc. No. 13-4, ¶ 1).

February 27, 2007 complaint, which was closed on April 5, 2007. (Doc. No. 13-2, ¶ 4; Doc. No. 13-4, ¶¶3-4). Plaintiff was issued a Notice of Right to File a Formal Complaint letter on April 5, 2007, but Plaintiff never filed a formal complaint. (Doc. No. 13-2, ¶¶ 4, 5; Doc. No. 13-4, ¶ 4). Thus, any complaints that Plaintiff made in her February 27, 2007 complaint were never exhausted and cannot form the basis of her lawsuit in this action.

Defendant argues that Plaintiff's claims of discrimination based on gender, religion, disability and retaliation fail because Plaintiff has failed to exhaust her administrative remedies. See Duncan v. Delta Consol. Indus., 371 F.3d 1020, 1024 (8th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1)) (Title VII requires claimants to timely file a discrimination charge and exhaust her administrative remedies before she may bring a Title VII action in court). Despite filing two EEO complaints (March or April 2006 and February 27, 2007), Plaintiff only exhausted her race discrimination claim, which was filed in March or April 2006. The IRS's EEO files do not contain any record that Plaintiff ever filed a complaint alleging discrimination based on sex, religion or disability, a claim for retaliation or a claim for hostile work environment. (Reply, p. 2, n. 2).[12] Plaintiff has not filed a formal EEO complaint alleging either reprisal or retaliation.[13] (Reply, p. 2); see Williams, 21 F.3d at 223 ("Williams' claims of race discrimination are separate and distinct from her claims of retaliation").

---

[12] In fact, Plaintiff admits that she did not include allegations of discrimination based on sex, religion or disability, or retaliation or hostile work environment in her March/April 2006 complaint, which is the only formal complaint filed (and properly exhausted) by Plaintiff. Plaintiff alleges that "I could not file a claim based on sex, religion, disability, retaliation, or hostile work environment because at the time when I filed it was not going on. But after I filed the 1st complaint [March/April 2006 complaint] I was discriminated on the bases of my sex, religion, disability, retaliation, or hostile work environment." (Plaintiff's Affidavit, p. 16).

[13] Plaintiff's pre-complaint intake form (informal complaint) filed on February 27, 2007, included a claim of "retaliation reprisal" (Plaintiff's Affidavit, p. 17), but this allegation was not included in a formal complaint and never exhausted.

Plaintiff never filed a formal EEO complaint regarding her February 2007 claims nor amended her March/April 2006 Complaint.  (Reply, p. 2).

In response, Plaintiff believes that she exhausted her administrative remedies because she "went through the agencies [sic] so called procedures and was treated unfairly because I filed the 1st EEO complaint."  (Plaintiff's Affidavit, p. 6).  Plaintiff further states that "I did try to exhaust my concerns about everything but management ignored me." (Plaintiff's Affidavit, p. 8).  Plaintiff further alleges that "[t]he EEO claim I filed in April 2006 is not the only one I exhausted."  (Plaintiff's Affidavit, p. 9).  Plaintiff, however, has not provided any supporting documentation to demonstrate that she exhausted her administrative remedies, except for her race discrimination claim.  Absent any supporting documentation, Plaintiff's unsubstantiated, self-serving affidavit cannot avoid summary judgment.  Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 831 (8th Cir. 2008) (quoting Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.").  Rather, the plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiffs favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

Plaintiff only exhausted her March/April 2006 complaint.  Plaintiff only checked one box (race) on her March/April 2006 complaint.  Plaintiff failed to exhaust any other claims of discrimination or retaliation.  Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004) (where plaintiff did not check the box next to "retaliation" on the complaint form, plaintiff failed to exhaust his administrative remedies and trial court properly granted summary judgment); Duncan, 371 F.3d at 1025 (pro se plaintiff did not check the "sex" box on her EEOC complaint form and, therefore, plaintiff's sexual harassment claim was outside the scope of the administrative charge and thus could not be litigated in the action). Plaintiff's claim, if any, can only be for discrimination based

upon race. Thus, Plaintiff's claims of discrimination based on gender, religion, disability and retaliation fail as a matter of law because she failed to exhaust her administrative remedies with respect to those claims.

**B.** **Plaintiff's claim of race discrimination fails because Plaintiff has failed to rebut the legitimate, nondiscriminatory reason that Plaintiff's request for FMLA leave was denied.**

Plaintiff's claim for race discrimination is the only claim that Plaintiff exhausted and that is properly before this court. Upon review by the Court, Plaintiff's claim for race discrimination also fails as a matter of law.

In Plaintiff's Affidavit, she claims that, after Ms. Ferguson denied Plaintiff's leave request, "the union discovered the agency was violating employee rights regarding FMLA." (Plaintiff's Affidavit, p. 4). Thus, Plaintiff acknowledges that Ms. Ferguson denied Plaintiff's FMLA leave request because Ms. Ferguson mistakenly believed she was not authorized to approve such leave, not because of any discriminatory animus. (Id.) Ms. Ferguson's mistaken belief that she did not have the authority to approve Plaintiff's advance leave request does not provide evidence of pretext. "Evidence of mistake will not suffice to show pretext, though; pretext 'means a lie, specifically a phony reason for some action.'" Keys v. Foamex, L.P., 264 Fed. Appx. 507, 510, No. 05-3683, 2008 U.S. App. LEXIS 3310, at * 7 (7th Cir. Feb. 12, 2008) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)); Bannon v. Univ. of Chi., 503 F.3d 623, 632 (7th Cir. 2007) (if employer's stated reason for terminating employee was mistaken, the court does not hold it was pretextual); Johnson v. AT&T Corp., 422 F.3d 756, 763 (8th Cir. 2005) (even if employer was mistaken in its belief that plaintiff had made the threats for which he was fired, any such mistake does not automatically prove that the employer was instead motivated by unlawful discrimination).

Plaintiff cites to various regulations and policies to support her claim that Ms. Ferguson had the authority to approve her leave. (Plaintiff's Affidavit, pp. 13, 15). However, even if Ms. Ferguson had such authority, that does not make her decision to deny Plaintiff's advance leave request discriminatory. The showing of pretext necessary to survive summary judgment requires more than merely discrediting the proffered reason for the adverse employment decision. Plaintiff must also prove that the proffered reason was a pretext for race discrimination. Kohrt v. Midamerican Energy Co., 364 F.3d 894, 898 (8th Cir. 2004) (citing Spencer v. Stuart Hall Co., 173 F.3d 1124, 1128 (8th Cir. 1999)); Johnson, 422 F.3d at 763 ("the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee"; the plaintiff is also required to show that the circumstances permit a reasonable inference to be drawn that the real reason the employer took the adverse action was because of his race).

As additional support for Plaintiff's claim and in an attempt to prove pretext, Plaintiff attempts to demonstrate that she was treated less favorably than a similarly situated employee outside of her protected group. In support for Plaintiff's claim, she alleges that FMLA advanced leave was approved for a caucasian female, Ms. Overshon, which evidences racial discriminatory animus. Plaintiff alleges that she and Ms. Overshon were both assigned to the same "critical job element and position description," and that they were assigned to different departments within IRS Operations 3.[14] (Plaintiff's Affidavit, p. 20). Plaintiff has the burden of proving that she and Ms. Overshon were "'similarly situated in all relevant respects.'" King v. Hardesty, 517 F.3d 1049, 1063 (8th Cir. 2008) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). "This is a rigorous test to meet." Id. "To satisfy this standard, the individuals used as comparators must have dealt with the

---

[14]IRS Operations 3, located in St. Louis, is comprised of five departments, and each department is comprised of different teams, each led by a different supervisor. (Reply, p. 10).

same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 851 (8th Cir. 2005) (citations omitted).

Here, Plaintiff falls short because she has failed to show that she was similarly situated to Ms. Overshon.  Ms. Overshon was in a different department, on a different team and had a different supervisor than Plaintiff.  (Reply, p. 10).  Ms. Overshon worked in Department 1 and her immediate supervisor was Patty Reynolds, who approved Ms. Overshon's FMLA leave request.  (Reply, p. 11, n. 5).  Bruce Korbesmeyer, head of Operations 3,[15] provided the final approval for Ms. Overshon's leave request. (Reply, p. 11).[16]  In contrast, Plaintiff worked in Department 4 and her immediate supervisor was Madonna Carrino, who initially approved Plaintiff's leave request.  (Reply, pp. 10-11).  Ms. Ferguson, head of Operations 3, later denied Plaintiff's leave request.  (Reply, p. 11).  Plaintiff's purported comparator is not similarly situation to her because Ms. Overshon was not subject to the same decisionmaker as Plaintiff when each woman made her request.  See Ellis v. UPS, Inc., 523 F.3d 823, 826-28 (7th Cir. 2008) (plaintiff's failure to establish that any other similarly situated manager was treated more favorably dooms his discrimination claim).

Plaintiff's race discrimination claims as a matter of law.  Defendant has put forth a legitimate nondiscriminatory reason for denying Plaintiff's claim for advanced FMLA leave.  Bannon, 503 F.3d 631 (if the employer offers a legitimate, nondiscriminatory reason for the adverse employment action, the employee must show that the reason is pretextual).  Defendant has provided affidavits to support this legitimate nondiscriminatory reason.   Plaintiff has not provided any support for her claim that

---

[15]Mr. Korbesmeyer was replaced by Ms. Ferguson.

[16]Plaintiff admits that she and Ms. Overshon were in different departments at the time of their respective leave requests.  (Plaintiff's Affidavit, p. 20).

her request for advanced FMLA leave was denied because of a discriminatory motive or that Defendant's stated reason for denying Plaintiff's leave request was pretextual. In fact, Plaintiff and Defendant have both put forth evidence that Ms. Ferguson denied Plaintiff's FMLA request based upon Ms. Ferguson's understanding of her authority to approve such leave. While Ms. Ferguson's belief may (or may not) have been erroneous, there is no evidence to support a claim that it was discriminatory. This Court grants Defendant's Motion for Summary Judgment on that claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 26th day of February, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE